IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BO HUNT, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | 2:25-cv-01323 |
| | : | |
| VALLEY FORGE MILITARY ACADEMY | : | |
| AND COLLEGE | : | |
| *Defendant.* | : | |

## MEMORANDUM

### I.    Introduction and Factual Background

This Court held a hearing on August 12, 2025 at which time Plaintiff's counsel was to appear and show cause as to why sanctions should not be imposed for failure to comply with the rules of court.  This case was initiated with the filing of a complaint on March 12, 2025 which asserted a § 1983 action on behalf of a former Valley Forge Military Academy student claiming denial of due process prior to his expulsion.  The Complaint was signed by Devon Jacob, an attorney licensed to practice in Pennsylvania and Solomon Radner, an attorney who is not.[1] Mr. Radnor was admitted to practice here in the Eastern District of Pennsylvania *pro hac vice* on April 2, 2025. Devon Jacob was sponsoring counsel for Mr. Radner's *pro hac vice* admission.

From the very first filing of this case, the pleadings filed by Plaintiff's counsel have been woefully inadequate. In his first complaint (the "Initial Complaint" at Dkt.

---

[1]    Solomon Radner is licensed to practice law in the states of New Jersey and Michigan. His office is in Michigan.  Mr. Radner represented to the court that he has cases all over the country for which he routinely practices *pro hac vice.*

#1), Plaintiff Bo Hunt ("Plaintiff") repeatedly mentioned by name an alleged student victim of sexual assault. This is clearly inappropriate by common sense, let alone the many cases in the Third Circuit and Eastern District of Pennsylvania which required such information be placed under seal. To make a bad situation worse, this unjustified disclosure of this sensitive identifying information was done in service of an objectively frivolous complaint. The Initial Complaint brought one count for a violation of § 1983 against a private, non-government school.

This first frivolous filing from March 12, 2025 led to an unacceptable pattern which has perpetuated over the next five months, during which virtually no substantive progress has occurred in the case. After Plaintiff put the victim's name on the docket, Defendant Valley Forge Military Academy ("Defendant") was forced to file an emergency motion to strike (Dkt. #8), and this Court was forced to expend judicial resources and taxpayer dollars to analyze and grant the motion on an emergency basis. This Court ordered that Plaintiff should consult with Defendant before refiling to ensure both Parties were satisfied by the pseudonym to be used in place of the true name of the alleged victim of sexual assault. The Court assumed this order would settle the anonymity issue once and for all.

Not so. Plaintiff blatantly disregarded the Court's order requiring the Parties meet and confer and filed a first amended complaint (the "First Amended Complaint" at Dkt. #16) which, in Defendant's and this Court's view, failed to adequately ensure the victim's anonymity. The First Amended Complaint insufficiently and unilaterally inserted a pseudonym, but did not address the complaint's other glaring inadequacy.

The First Amended Complaint *still* brought one count, and that count was *still* the frivolous § 1983 claim against a private school. Defendant was once again forced to spend its time and money helping to fix Plaintiff's failure to use a sufficient pseudonym. Shortly after the First Amended Complaint was filed, the Parties jointly moved the Court to strike and replace the amended complaint (the "Joint Motion to Strike" at Dkt. #17), this time with an agreed-upon pseudonym, as the Court required two weeks prior.

On May 6, 2025, while the Joint Motion to Strike was pending, Defendant and Plaintiff met and conferred about an upcoming motion to dismiss Defendant intended to file pursuant to Rule 12(b)(6).  It is uncontested that at that meeting, Defendant flagged for Plaintiff what should have been obvious from the first moment the Initial Complaint was drafted: a § 1983 action was a total nonstarter against a private school. During this meeting Plaintiff's counsel expressed his intent to amend the complaint by withdrawing the § 1983 action and plead instead a Title IX action.

This, of course, should have led to an immediate correction. In fact, this Court's published Guidelines allow a party who has conceded a pleading error after meeting and conferring on a Rule 12(b)(6) motion to submit a corrected amended complaint without further leave of Court. Even if this Court's procedures were unknown to Plaintiff (which of course would not be an excuse), the default Rules of Civil Procedure at very least clearly permit a party to *move* for leave to amend, when they cannot amend as of right. Surely, by one of these two methods, Plaintiff's counsel would

ensure that his objectively frivolous First Amended Complaint be replaced by the Title IX action he apparently meant to file.

Alas, no such action was taken. Instead, for almost two months, Plaintiff's counsel was fully aware of the frivolousness of the First Amended Complaint and did nothing at all. Defendant was once again forced to spend its energy addressing Plaintiff's filings and file a motion to dismiss the § 1983 count that Plaintiff agreed was frivolous more than a month prior. That motion was filed on June 11, 2025 (the "Motion to Dismiss" at Dkt. #20).

After the Motion to Dismiss was filed, the Court addressed the earlier Joint Motion to Strike and Plaintiff filed a second amended complaint (incorrectly styled as the First Amended Complaint), this time with the agreed-upon pseudonym (the "Second Amended Complaint" at Dkt. #22).[2] Shortly thereafter, defense counsel asked the Court to permit the Motion to Dismiss to relate forward and alerted this Court to the fact that Plaintiff's counsel was on notice for nearly two months of this fatal flaw in each of the Complaints but took no action to remedy it. Only after that letter was filed did Plaintiff finally take action to replace his § 1983 claim by filing a motion for leave to file an amended complaint with a Title IX count instead. The Court granted leave to amend but ordered Plaintiff to show cause as to why counsel should not be

---

[2] While the Second Amended Complaint, too, was frivolous for the same reason, this Court does not consider this to be a separate incident of frivolousness from Plaintiff's submission of the proposed amended complaint to the Joint Motion to Strike. The Court's order only permitted Plaintiff to file the amended complaint specifically attached to the Joint Motion to Strike. So, while this Court finds Plaintiff erred seriously in not replacing the § 1983 claim with a Title IX claim when submitting the amended complaint attached to the Joint Motion to Strike, it will not count against Plaintiff the actual filing of the Second Amended Complaint, as that is merely a downstream effect of attaching that frivolous document to the Joint Motion to Strike.

sanctioned for permitting an obviously frivolous complaint to remain on this Court's docket for several months. Plaintiff and Defendant each responded. On July 31, 2025, Plaintiff filed his Third Amended Complaint (incorrectly styled as a Second Amended Complaint) which removed the § 1983 claim and which purports to plead allegations of a Title IX claim (the "Third Amended Complaint" at Dkt. #30). The proposed Third Amended Complaint remains subject to a pending motion to strike for exceeding this Court's permission.

## II.    Sanctions Hearing

On August 12, 2025, this Court held a sanctions hearing, at which Mr. Jacob and Mr. Radner appeared personally (the "Sanctions Hearing"). Defendant Valley Forge Military Academy was represented by counsel of record. In colloquy with the Court, local counsel Mr. Jacob professed that he insisted on being an active participant in the litigation and that he had demanded signoff on all filings. As to the frivolous claim in the First Amended Complaint against Defendant, Mr. Jacob informed the Court that he did not personally know that Defendant was not a state actor and that, as local counsel, he satisfied his requirement to reasonably investigate the allegations by relying on what he presumed was Mr. Radner's reasonable investigation into the matter. Mr. Jacob further explained to the Court that the First Amended Complaint (the one filed without meeting and conferring) was done without his involvement or knowledge and that Mr. Radner's staff affixed Mr. Jacobs's signature without his permission. Further, Mr. Jacob informed the Court that he did not participate in the meet and confer in May regarding the First Amended

Complaint's substantive failings and was unaware of those issues until he saw the Motion to Dismiss.

At the Sanctions Hearing, Mr. Jacob was apologetic, appearing embarrassed by the course of this litigation so far and exasperated by the failings of lead counsel. Mr. Jacob expressed that his reputation in the area is excellent and that he feared that this case has the potential to sully that reputation. Upon questioning by the Court, Mr. Jacob was unwilling to commit to continuing to assist Mr. Radner, if Mr. Radner was permitted to continue to practice before this Court.

Mr. Radner was similarly apologetic and disturbed by his own work product in this case so far. Mr. Radner told the Court he had not gotten a full night's sleep since the original Order to Show Cause in this case. Upon questioning, Mr. Radner attempted to explain why certain of his failings occurred.[3] As to the Initial Complaint, Mr. Radner appeared to suggest that the reason he drafted a § 1983 complaint was because some unidentified person in his office checked a box in a client intake form. Mr. Radner could not identify any other investigation he did into Defendant's status as a potential government actor. Prior to filing the complaint, Mr. Radner had never met the plaintiff, ever inquired as to whether the Defendant was a public or private entity, and he admitted that he did not even perform a simple Google search of Defendant; a search which would have immediately provided evidence that Valley Forge Military Academy is a private institution[4].

---

[3]    As will be explained *infra*, these explanations did not lessen his culpability in the eyes of the Court.
[4]    It is entirely reasonable for the Court to expect counsel to exercise basic due diligence before initiating litigation. At a minimum, this includes having direct contact with the client and conducting

As to his failure to meet and confer before submitting the First Amended Complaint, Mr. Radner pointed the finger at a now-terminated paralegal. Mr. Radner explained that he had asked that paralegal to send the First Amended Complaint to Defense counsel for approval, but instead she filed it without doing so and without seeking further approval from Mr. Radner. Mr. Radner conceded that it is his responsibility to supervise his support staff.

Mr. Radner also concedes that he was aware of the frivolousness of the First Amended Complaint as of the May meet and confer. Mr. Radner gave confusing and at least somewhat contradictory explanations regarding why he failed to remedy this error. On one hand, he pointed the finger at Defendant, saying they refused to consent to further amendment. Defendant maintains that Plaintiff was seeking leave to dismiss the entire action and start anew on a fresh docket, rather than merely seeking leave to amend the First Amended Complaint in the present matter. On the other hand, Mr. Radner suggested he did not think it was appropriate to seek leave to amend because of the pending Joint Motion to Strike which was filed to fix the pseudonym problem. At oral argument, Mr. Radner conceded he was aware that he could withdraw a motion and refile a new motion or file for leave to amend.

At the hearing, Mr. Radner implicitly conceded that sanctions were appropriate. When asked by the Court why he should not have to cover some of Defendant's expenses with regard to his failed pleadings, Mr. Radner agreed it

a simple Google search to determine whether a potential defendant is a public or private entity. That such fundamental steps appear to have been overlooked is concerning. The Court sincerely hopes that the profession's standard bearers do not regard this minimal level of effort as constituting "due diligence"

probably was fair to make him pay for some of it. But Mr. Radner requested that this Court not award Defendant's their full requested amount, not sanction Mr. Jacob, and that sanctions (if any) against himself be done pursuant to this Court's inherent authority, rather than Rule 11.

## III.    Relevant Legal Standards

All attorneys appearing before this Court, including those appearing *pro hac vice*, are bound by the Pennsylvania Rules of Professional Conduct. *See* Local.R.Civ.P. 83.6(IV)(B), (VIII); *see also Int'l Longshoremen's Ass'n, Loc. Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287, 290 (E.D. Pa. 1995) (Brody, J.) ("All counsel appearing before this court must comply with the Pennsylvania Rules of Professional Conduct. . . ."). The Pennsylvania Rules of Professional Conduct permit a lawyer barred in another jurisdiction to practice temporarily in Pennsylvania if such efforts are undertaken with a lawyer who is admitted to practice here and who actively participates in the matter. Pa.R.P.C. 5.5(c)(1). The Pennsylvania Rules of Professional Conduct require that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. . . ." *Id*. at 3.1.[5]  The Rules of Professional Conduct also require attorneys to supervise non-attorney personnel. *Id*. at 5.3. That same rule imputes the improper conduct of nonlawyer support staff upon a lawyer if the lawyer

---

[5]      The Michigan and New Jersey Rules of Professional Conduct (i.e., those of the states in which Mr. Radner is admitted to practice) include identical or substantially similar rules, also at Rule 3.1. *See* Mi. RPC 3.1; N.J. RPC 3.1.

"ratifies the conduct involved" with knowledge of the conduct or fails to mitigate the consequences of the action. *Id.*[6]

Similarly, Rule 11 of the Federal Rules of Civil Procedure says that upon the signing of a Complaint, counsel is certifying to the Court a belief that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(2)-(3). The Rules also require that these default certifications be made "after an inquiry reasonable under the circumstances. . . ." Fed.R.Civ.P. 11(b). The Third Circuit has summarized the gist of Rule 11 as imposing on counsel "a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)). Rule 11 requires, therefore, both a "reasonable investigation of the facts and a normally competent level of legal research supporting the presentation." *Lieb*, 788 F.2d at 157. Rule 11 is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Id.* (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986). There is no subjective good faith safe harbor. *Id.* Instead, the test is an objective one

---

[6]    The Michigan and New Jersey Rules also have analogous provisions to Pennsylvania's Rule 5.3.

of reasonableness. *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985) (implicitly overruled on other ground).

A district court examining the sufficiency of an investigation for Rule 11 purposes "is expected to avoid the wisdom of hindsight and should test the signer's conduct by asking what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *CTC Imports and Exports v. Nigerian Petroleum Corp.,* 951 F.2d 573, 578 (3d Cir. 1991*)* (cleaned up). The Court must consider all the circumstances, including "the amount of time the signer had to investigate, whether the signing attorney had to rely on a client for information as to the facts, and whether the signer depended on prior counsel or another member of the bar if the case has been transferred." *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc*., 999 F.2d 745, 752 (3d Cir. 1993). While discussions with a client are almost always *part* of the reasonable inquiry process, where contradictory information is easily available to an attorney, that attorney cannot shield themselves from Rule 11 sanctions by merely pointing to the incorrect information they received from their client. *See Turner Const. Co. v. First Indem. of Am. Ins. Co*., 829 F. Supp. 752, 770 (E.D. Pa. 1993). Generally, a court should choose the least severe sanctions adequate to serve the purpose of the sanctions. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). But embedded within this principle setting a ceiling is also a floor; a court must choose the least severe sanctions **adequate**. *Id*. (emphasis added). Therefore, a court is required to ensure its sanctions adequately address the violation.

Upon a finding of a Rule 11(b) violation, this Court may impose appropriate sanctions. "What is 'appropriate' may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 811 (3d Cir. 1992). "The pleader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate." *Lieb*, 788 F.2d at 157–58. But alongside Rule 11, this Court also possess inherent authority to sanction those before it. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577, n.4 (3d Cir. 2018). That is true "even if procedural rules exist which sanction the same conduct." *Id.*

## IV. Analysis

### a. Sanctions will not be issued against Mr. Jacob

This Court has carefully considered the propriety of sanctions against Mr. Jacob. It could easily be argued that he has failed in his responsibility to ensure compliance with the Local Rules and this Court's procedures, given Plaintiff's inability to follow them. But Mr. Jacob credibly told this Court that many of the failings discussed above were things that occurred while he was left out of the loop, an assertion with which Mr. Radner concurred. Mr. Jacob seemed sincerely contrite and appropriately embarrassed with what has occurred and credibly explained that he has taken an even more active approach to his supervision. In short, Mr. Jacob

showed up, took responsibility for his own failings, and convincingly explained why he should not be blamed for the things that were not his own failings.

This Court will not sanction Mr. Jacob, as it believes that the Order to Show Cause and Sanctions Hearing have had their desired effect on Mr. Jacob, and that his blameworthiness is comparatively minimal. The Order to Show Cause and public hearing are punishment enough for his conduct, and further reprimand would be excessive given his involvement. Further, while this Court will not require Mr. Jacob to remain in this litigation against his will, it discourages Mr. Jacob from withdrawing from the case. This Court believes his insight and experience may well be of continued use to Mr. Radner and their client.

**b. This Court will sanction Mr. Radner under its inherent authority to do so.**

**i. Sanctions are appropriate here.**

As is likely self-evident from the recitation of facts *supra*, sanctions against Mr. Radner are warranted in this case based upon: 1) Mr. Radner's filing of a frivolous complaint without a sufficient investigation into the facts of the case; 2) his failure to properly anonymize a student victim of an alleged sexual assault; 3) his disobedience of a Court order requiring the Parties to meet and confer to fix the pseudonym problem; and 4) his failure to promptly rectify those mistakes when they became known to him.

From oral argument, it is clear that Mr. Radner assumed that Defendant was a state-run school, based only upon information someone else at his firm had marked on an intake form. In fact, Mr. Radner's answers suggest he had not personally

spoken to his client before filing the Initial Complaint in this case. As demonstrated by the document marked as Judicial Exhibit 1 at the Sanction's Hearing, upon launching Defendant's website, it becomes immediately apparent that Defendant is a private institution. Indeed, one need not even open their website, as Google's website preview says as much. Therefore, even if there were some reason to find mitigation in Mr. Radner's relying on a staff member who spoke to Plaintiff, that reliance would not be safe harbor from sanctions. *See Turner Const. Co.*., 829 F. Supp. at 770. Where, as here, there is easily-attainable information which contradicts the Plaintiff's understanding, an attorney is required to make use of that information. *Id.*[7]

As to the first, failed, attempt at amending the complaint to include a proper pseudonym, Mr. Radner cannot escape sanction for failing to meet and confer because the filing was the wrongdoing of a rogue paralegal. Mr. Radner has a responsibility to supervise his support staff, and when he did not immediately seek its removal from the docket, he ratified the decision that staffer made or failed to mitigate its harm. *See* Pa.R.P.C. 5.3.

Mr. Radner, when questioned as to why this frivolous complaint was allowed to sit for almost two months uncorrected after the Parties met and conferred, gave

---

[7]      Further, to the extent Mr. Radner casts the Initial Complaint as an innocent mistake on his behalf due to poor intake by his support staff, Mr. Radner at least arguably was negligent in supervising his support staff by blindly trusting a representation which is clearly wrong. Further, he arguably knowingly endorsed their mistake by failing to move for leave to amend the complaint when he became aware of its substantive flaw, and he certainly did not act swiftly to mitigate its harm. *See* Pa.R.P.C. 5.3.

several explanations, each of which fail to reduce his blameworthiness. His first explanation was that the Joint Motion to Strike was pending, and he felt it would be "improper" to make a further motion for leave to amend the First Amended Complaint substantively. Mr. Radner presented no legal authority for the idea that such a motion would be improper.[8] Withdrawing the pending Joint Motion to Strike and replacing it with another motion proposing to fix both the pseudonym and the substantive error was the route to take, even if such motion would be contested rather than uncontested.

Another sideshow in the hearing and briefing was some bickering about what exactly Mr. Radner requested Defendant's consent to do. Defendant maintains that Mr. Radner wanted permission to dismiss the case altogether without prejudice and then refile. Mr. Radner, conversely, believes he only requested permission to file an amended complaint, which would remedy the § 1983 issue. From the limited email traffic presented to the Court, the Court thinks Defendant's interpretation of Plaintiff's request was reasonable. While this Court does not have any concerns about "judge shopping" (as a related case would be reassigned to this Court regardless), it would be reasonable for Defendant to not want to restart the case, incur additional expenses, and slow down the litigation in general.

Perhaps more importantly, even assuming Mr. Radner's understanding of the communications was accurate, there was nothing preventing him from unilaterally

---

[8]     To the extent Mr. Radner's reticence to ask for leave to amend while the Motion to Strike was pending was based on his understanding of some "unwritten rules" of respect for the Court, this Court, subjectively, would find nothing improper or uncouth about such a motion. Rather, the Court would appreciate the diligence of counsel who realizes a mistake and tries to fix it.

dismissing the case to fix his two-month-old mistake. The Rules of Civil Procedure permit unilateral dismissal without prejudice in this situation, and Plaintiff's counsel did not raise any statute of limitations issues when asked about it at argument. *See* Fed.R.Civ.P. 41(a)(1)(A) (permitting voluntary dismissal by a plaintiff without court order if done before the filing of an answer or a motion for summary judgment). Instead, Mr. Radner let the frivolous complaint to sit for another two months.[9]

Mr. Radner, perhaps seeking to limit his financial exposure rather than issuance of sanctions, questions why Defendant needed to file the Motion to Dismiss at all- or at least why it filed such a fulsome brief- when he already had agreed on the phone that his § 1983 claim should be dismissed. At most, Mr. Radner suggested, Defendant should have filed a one or two page brief that explains the flaw in the First Amended Complaint and says both sides agree on dismissal without prejudice. But that argument fails to appreciate that Defendant could have been greatly prejudiced if Mr. Radner had been more willing to engage in sharp litigation tactics.

Another, less cooperative, counsel may have sought a default if no response was filed or argued that the legal arguments regarding the § 1983 were underdeveloped and therefore waived if Defendant filed the terse memorandum Plaintiff suggests it should have. While this Court surely would have eventually gotten to the bottom of the interaction between the Parties and permitted Defendant

---

[9]    This Court's published Guidelines permit a party to amend as of right after a meet and confer in advance of a 12(b)(6). Mr. Radner professed confusion at this Court's Guideline to that effect. Granting Mr. Radner that he was genuinely confused, that misinterpretation still is not exculpatory, as he could clearly have requested leave to amend pursuant to the Federal Rules.

the opportunity to fully brief the issue, that would likely only have been after *further* motions practice and related expenses. While this Court easily accepts as true Mr. Radner's representations that he would not have tried to catch Defendant in a "gotcha" moment, it was not at all unreasonable for Defendant to protect against such a possibility, given the early state of the case and the difficulties Mr. Radner created for Defendant throughout the litigation to that point.[10]

This Court appreciates that Mr. Radner has asked this Court not to discipline Mr. Jacob, as Mr. Radner has thereby taken full responsibility for the failings thus far in the case. That sort of accountability goes a long way before this Court. But given this Court's findings *supra* that Mr. Jacob appears to be quite capable and detail-oriented, Mr. Radner's admissions and the overall failings in this case call into question whether Mr. Radner has permitted Mr. Jacob to "actively participate[]" as required by the Rules of Professional Conduct. That further weighs in favor of sanctions.

Finally, Mr. Radner has informed this Court that these mistakes are entirely atypical over the course of his career. It may well be true that Mr. Radner has not been sanctioned prior. But a review of the docket in another case he filed here in the

---

[10]    At one point during oral argument during the Sanctions Hearing, both counsel for Plaintiff seemed to suggest counsel for Defendant bore some amount of responsibility for the frivolous Second Amended Complaint, which was attached to the Joint Motion to Strike, as Defendant jointly submitted the motion. Considered charitably, perhaps Plaintiff was arguing that had the mistake been flagged at that time, it would have been fixed earlier. But there is no rule which would require Defendant to discuss substantive problems with his case until the Motion to Dismiss was forthcoming, and the essence of the Joint Motion to Strike was about properly anonymizing an alleged victim, not getting bogged down in helping Plaintiff improve his case against Defendant.

Eastern District of Pennsylvania finds the substantive problems in that case to be entirely consistent with the substantive problems in the case at bar.

More specifically, Mr. Radner also represented another plaintiff in the Eastern District of Pennsylvania in a case called *Magalengo v. Pennsylvania Interscholastic Athletic Association, Inc*. In that case, Chief Judge Beetlestone dismissed the PIAA from the case because Plaintiff "failed to allege any facts in her Amended Complaint which would lead to the plausible inference that the PIAA is federal funded" which is a required element to succeed on her Title IX claim. *Magalengo v. Pennsylvania Interscholastic Athletic Ass'n, Inc.,* No. CV 25-325, 2025 WL 2200916, at *7 (E.D. Pa. Aug. 1, 2025). This Court cannot help but see a parallel between Mr. Radner's failure to ensure there was state action here with his failure there to ensure there was federal funding there, even after having the opportunity to amend. Every other count in that case against every other defendant was also dismissed.

Considering all the foregoing, the filing of the Initial Complaint was objectively and obviously frivolous, and therefore worthy of sanction. Mr. Radner's steadfast refusal to do anything about it until the Motion to Dismiss was filed was outrageous and therefore justified a more serious sanction. Mr. Radner plainly failed to conduct an investigation reasonable under the circumstances when he could not even be bothered to Google search the Defendant. Virtually *any* amount of research would have uncovered facts which would make his legal claim under § 1983 plainly frivolous. In that way, Mr. Radner did not accept the Third Circuit's admonition to

17

"stop look and listen" and did not perform a "normally competent level of legal research supporting the presentation." *See Lieb*, 788 F.2d at 157.

Further, Mr. Radner's initial failure to anonymize the victim of sexual assault is also sanctionable. The Third Circuit case law requiring pseudonym usage in such situations is compelling, though perhaps not entirely binding. But even if that slight ambiguity may excuse Mr. Radner's first failure, his subsequent disobedience of an order of this Court requiring meeting and conferring before filing the First Amended Complaint certainly is sanctionable. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) (disobedience of court orders in civil cases can be sanctioned).

In so concluding, this Court considers the totality of the circumstances, as required by the Third Circuit. *Bradgate Assoc.*, 999 F.2d at 752. The Court is not playing the result, as it were. The incorrect cause of action was apparent "at the time the pleading... was submitted" as was Plaintiff's failure to meet and confer regarding the proper pseudonym. *CTC Imports and Exports*, 951 F.2d at 578. There was no particular timeline to file which could justify a rushed and error-laden filing. Presuming *arguendo* that counsel had in fact spoken with the Plaintiff directly, there was no need to rely on Plaintiff himself as to factual and easily-obtained information about Defendant's status as a private school, and certainly no basis to rely on Plaintiff as to the proper pseudonym to use. There simply is no excuse for the initial filing and then continued proliferation of a § 1983 claim against Defendant, or the failure to anonymize a student or to meet regarding how best to fix that mistake. For all the reasons stated above, this Court finds that sanctions against Mr. Radner are both

appropriate in light of the course of his litigation tactics and necessary to disincentivize similar conduct going forward.[11]

> ## ii. The Court will sanction Mr. Radner under its inherent authority and will issue financial sanctions, require attendance in a continuing legal education course, and will continue to require local counsel's signature on all filings.

Because Mr. Radner appeared sincerely contrite and because this case now appears to be on the right substantive tracks, this Court grants Mr. Radner's request to not sanction him pursuant to Rule 11. As the legal citations and factual recitation above show, Rule 11 sanctions would plainly be appropriate. But given the nature of Mr. Radner's national practice, this Court also acknowledges that Rule 11 sanctions have the potential to have a devastating impact upon his ability to generate business and obtain clients. While his missteps in this case have been both significant and unexplainable, that sort of impact would be more heavy than necessary to effectuate the purpose of the sanctions. For that reason, the following sanctions are made, as Mr. Radner requested, pursuant to this Court's inherent authority rather than Rule 11.

In the first instance, this Court has reviewed *in camera* Defendant's request for attorney's fees. This Court has deducted the time it feels was unnecessary or excessive and has determined that the requested hourly rates are reasonable based

---

[11]     As will be explained next, this Court chooses to issue sanctions under its inherent authority, rather than Rule 11, as a courtesy to Mr. Radner in recognition of the legitimate contrition he expressed at the Sanction Hearing and his willingness to accept responsibility for his actions. This Court cites to the cases interpreting Rule 11 as persuasive authority regarding what it should consider and how it should consider it when utilizing that inherent authority.

upon the prevailing rates for comparable legal services in the City of Philadelphia.[12] Upon completion of this process, this Court determines that a sanction of $5,902 is appropriate. Mr. Radner is ordered to pay that amount directly to Defendant within 45 days, or another timeline if the Parties agree. Should 45 days not be enough time and the Parties cannot agree on another timeline, the Parties should immediately inform the Court of that disagreement, which the Court will resolve in a virtual status conference.

Further, within 60 days, Mr. Radner is ordered to attend, either via virtually or in person, a continuing legal education course of at least one hour which discusses the steps a Plaintiff must go through before the filing of a Complaint, including investigation of a claim.[13] Mr. Radner is further ordered that all current attorneys or support staff under his supervision or assisting with this matter are required to attend this CLE with him. Mr. Radner should file a certification with the Court upon his completion of this requirement, and should include in that certification the names of all attendees from his Firm.

---

[12]     A precise calculation is not strictly necessary, given that this is a totally discretionary award of sanctions rather than a statutorily-mandated award at the close of a Plaintiff's employment case, for example. But this Court does feel that fairness to Mr. Radner requires a measured approach based upon this Court's reasoned judgment of the additional hours of work his mistakes caused for Defendant as this Court is using that as one basis for the award of sanctions.

[13]     This Court is aware of one available on demand for viewing through the Practicing Law Institute platform, but Mr. Radner is welcome to find another or to have a bespoke class prepared by an attorney from outside his Firm if such class can be certified for credit under either the Michigan, Pennsylvania, or New Jersey continuing legal education governing bodies.

Finally, Mr. Radner will be under a continued obligation to have local counsel co-sign every filing in this matter until such time as this Court may release him from that obligation.

## V.    Conclusion

This Court does not take these steps lightly, but bad lawyering diminishes the entire profession.  Given the nature of the litigation thus far, sanctions are necessary to acknowledge the damage done to Defendant, the harm or potential harm brought on a student victim of assault, and the significant Court resources spent working on this case. Further, they are necessary given the blatancy of the violations of the Rules of Professional Conduct in the filings of this case.

Courts should not sit idly by and allow the adversarial system to police such violations. For it is rarely in a private party's interest to spend its own resources regulating the legal industry. It is at least partially the responsibility of judges across America to defend the reputation of the practice of law- or at least to ensure its participants adhere to the established rules. A corresponding order will follow.

DATED: September 2, 2025                BY THE COURT:

_____
GAIL WEILHEIMER            J.